# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

SANDRA T. HELMS,

      Plaintiff,

v.                                                  Civ. No. 17-528 GJF

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

      Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum" ("Motion"). ECF No. 18. The Motion is fully briefed. *See* ECF No. 20 (Commissioner's Response); ECF No. 25 (Plaintiff's Reply). Having meticulously reviewed the entire record and the briefing, the Court finds that Plaintiff's Motion is well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **REVERSED** and **REMANDED**, though not for any mistake committed by the ALJ. Instead, as explained below, the Court's decision stems entirely from the Appeals Council's failure to consider relevant additional evidence. Accordingly, the Court will **GRANT** the Motion.

## I. BACKGROUND

Plaintiff was born November 25, 1966. Administrative R. ("AR") 141. She graduated high school in 1984 and then worked in the retail services industry as a customer service representative, sales associate, cashier, lead cashier, and assistant manager. She also worked briefly as a bank teller. AR 107-110, 291.

Plaintiff filed applications for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 2, 2013. AR 260-69. Plaintiff alleged disability

beginning on July 13, 2012, based on bipolar disorder and anxiety. AR 290. The Social Security Administration ("SSA") denied Plaintiff's application initially and upon reconsideration. AR 152, 180. At her request, Plaintiff received a *de novo* hearing before ALJ Michelle Lindsay, at which Plaintiff, her attorney, and vocational expert ("VE") Diane Weber appeared. AR 101-139. On December 21, 2015, the ALJ issued her decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 87-96. Plaintiff appealed to the SSA Appeals Council ("Appeals Council"), but it declined review. AR 1-4. The Appeals Council did, however, "look[ ] at" numerous records from Dr. Emily Moore, Ph.D. AR 3. It also considered and admitted into evidence several hundred additional pages of treatment notes. AR 914-1373. Nevertheless, because the Appeals Council declined to review Plaintiff's case, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2017). Plaintiff then timely filed her appeal with this Court. ECF No. 1.

## II.     PLAINTIFF'S CLAIMS

Plaintiff advances two grounds for relief. First, she argues that the Appeals Council improperly failed to consider Dr. Moore's psychological examination report and medical source statement. Pl.'s Mot. 12-16, ECF No. 18. Additionally, Plaintiff alleges that the ALJ erroneously assessed Plaintiff's reluctance to take her prescribed medication as a credibility issue. *Id.* at 17-19.

## III.    APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies review, the ALJ's decision becomes the final decision

of the agency.[1]  The Court's review of that final agency decision is both factual and legal.  *See*

*Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health &*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social

security appeal is whether the correct legal standards were applied and whether the decision is

supported by substantial evidence.").

     The factual findings at the administrative level are conclusive "if supported by substantial

evidence." 42 U.S.C. § 405(g) (2012).  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373

F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004);

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere

scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

Substantial evidence does not, however, require a preponderance of the evidence.  *See Lax v.*

*Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200

(10th Cir. 2004)).  A court should meticulously review the entire record but should neither re-

weigh the evidence nor substitute its judgment for that of the Commissioner.  *Langley*, 373 F.3d

at 1118; *Hamlin*, 365 F.3d at 1214.

     As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ

followed the specific rules of law that must be followed in weighing particular types of evidence

in disability cases." *Lax*, 489 F.3d at 1084.  The Court may reverse and remand if the ALJ failed

"to apply the correct legal standards, or to show . . . that [he] has done so." *Winfrey v. Chater*, 92

F.3d 1017, 1019 (10th Cir. 1996).

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the
ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2018); *O'Dell v. Shalala*, 44 F.3d
855, 858 (10th Cir. 1994).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

**B.  Sequential Evaluation Process**

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also*

*Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.     THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of July 13, 2012.  AR 89.  At step two, the ALJ found Plaintiff to suffer the following severe impairments: (1) personality disorder, not otherwise specified, with narcissistic traits; (2) major depressive disorder; and (3) generalized anxiety disorder.  AR 89.  In contrast, the ALJ found Plaintiff's diabetes mellitus to be nonsevere, "well controlled with medication," and "under very good control."  AR 90.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 90-91.  Specifically, the ALJ considered Plaintiff's mental impairments under Listing 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders).  AR 90-91.  The ALJ determined the evidence did not satisfy the paragraph B criteria of these Listings[2] "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration."  AR 92.  She then explained her reasoning regarding paragraph B's four subparts.

---

[2] Paragraph B of Listings 12.04, 12.06, and 12.08 (which was identical at the time in all three) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description.  To meet either of these two Listings, a claimant must exhibit at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, §§ 12.04(B), 12.06(B), 12.08(B) (2015).  On March 27, 2017, the SSA significantly altered the language of these listings in ways that are not relevant to this decision.

First, the ALJ evaluated Plaintiff's activities of daily living and found Plaintiff to only have a mild restriction. The ALJ noted that Plaintiff was "very conscientious about her diet," and that she could prepare meals herself to help regulate her blood glucose readings. AR 90. She further observed that Plaintiff participated in online forums discussing diabetes nutrition and kept a "detailed log of each meal along with her blood sugars before and after each meal." AR 90. Additionally, the ALJ recounted that Plaintiff could do her own laundry, provide for her personal care without assistance, and care for her dog. AR 90.

Second, the ALJ found Plaintiff to have moderate difficulties in social functioning. In support, the ALJ cited Plaintiff's statement that "she has daily fears and anxieties and she limits the amount of time she is outside of her house." AR 90. The ALJ also noted that Plaintiff had trouble interacting with both her supervisor and customers in her last position, and that the medical record substantiated Plaintiff's "continuing anxiety." AR 90. Thus the ALJ concluded that Plaintiff did "have moderate difficulties in social functioning," but she tempered that finding by opining that these difficulties "are not as severe as [Plaintiff] claims them to be given her past ability to work when she was compliant with medications." AR 91.

Third, as to Plaintiff's concentration, persistence, and pace, the ALJ found Plaintiff to have moderate difficulties. To buttress this finding, the ALJ relied on Plaintiff's statements that she is "unable to pay attention for very long and she does not finish what she starts." AR 91. The ALJ also found a notation in the medical record that Plaintiff has experienced a "decrease in concentration." AR 91. Here again, while the ALJ found Plaintiff to suffer moderate difficulties, she highlighted that "they are not as severely limiting as she alleges," and explained that Plaintiff's "overall treatment records reflect intact memory, adequate concentration, [and] linear and goal directed thought processes." AR 91.

Finally, regarding episodes of decompensation, the ALJ found that Plaintiff "has experienced no episodes of decompensation[ ] which have been of extended duration."  AR 91.  This corresponded with her finding that the paragraph C criteria of the relevant listings were also not met.  AR 91.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to the first phase of step four and assessed Plaintiff's RFC.  AR 91-94.  "After careful consideration of the entire record," the ALJ determined that Plaintiff:

> [H]ad the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand, remember, and carry out simple instructions; she is able to maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task; the claimant can have very little, if any, public contact; interactions with co-workers and supervisors should be superficial and incidental to the work performed.

AR 91.

To develop Plaintiff's RFC, the ALJ relied on two principal grounds.  First, the ALJ rendered an adverse credibility finding, opining that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision."  AR 92.  The ALJ premised this finding on a comparison between Plaintiff's statements and the medical record, which she addressed in three stages.

First, the ALJ chronicled Plaintiff's "history of mental health problems," to include "three hospitalizations in the past."  AR 92.  She recalled Plaintiff's statement that in 2008, her depression and anxiety seemed to return, which ultimately led to her separation from employment.  The ALJ also noted Plaintiff's belief that she remains "unable to work because her medications are not working and her fears have returned" along with Plaintiff's testimony that "she is nervous, angry . . . sad all the time," and unable to stay awake on account of her "bad

anxiety." AR 92. Yet, the ALJ took care to emphasize Plaintiff's admission that she avoids certain medications prescribed for her mental health because of the potential side effects she has learned about on the internet - particularly the effect the medications might have on her blood sugar levels. AR 92. The ALJ acknowledged that the medical records were "consistent with [Plaintiff's] reported symptoms of depression, anxiety, and personality disorder," but in her opinion, Plaintiff's chief impediment was "her personality disorder, which clearly indicates narcissistic traits." AR 92 (citing AR 648 – treatment note of Dr. Emiliano Valles stating that Plaintiff's "overwhelming presentation appears to be personality driven with characteristics of narcissism vs. histrionic"). The ALJ supported this view with record evidence, beginning with Plaintiff's return to New Mexico in December 2012, when she reinitiated her mental health care. The ALJ believed that, for a seven-month period thereafter, Plaintiff presented in a "generally consistent manner," in that she was cooperative, not unpleasant, with good eye contact, normal rate of speech and congruent mood, with no evidence of either suicidal behavior or hallucinations. AR 93. Throughout this period, however, Plaintiff also "continued to endorse low mood symptoms and long-standing difficulty in managing relationships," which to the ALJ, only reinforced that "[Plaintiff's] main issue [w]as her personality disorder." AR 93.

Next, the ALJ detailed Plaintiff's non-compliance with medication, which she felt simultaneously aggravated Plaintiff's symptoms and diminished her credibility. AR 93. The ALJ explained that, beginning in July 2013, Plaintiff began reporting her non-compliance to medical professionals along with the fact that her internet research had rendered her too afraid to take her medication. As a consequence of this non-compliance, the ALJ noted that Plaintiff's thought process, although goal directed, was "disorganized and tangential" and "veered off" toward fears and speculations. AR 93. The ALJ further remarked that, along with not taking her

medication, Plaintiff also refused to take medication "according to directions." AR 93. The ALJ found this particularly significant in light of a note "from a psychiatrist indicating that [Plaintiff's] symptoms are unlikely to improve significantly since she declines to change medication. . . ." AR 3.

Lastly, the ALJ discussed Plaintiff's failure to seek therapy for her mental health conditions, despite being urged to do so by medical health professionals. In fact, despite her mental health conditions, Plaintiff only attended therapy three times in 2014 and three times in 2015. And to the extent Plaintiff attended the behavioral health clinic, she was discharged for "not want[ing] to change her medications." AR 93. To the ALJ, this failure to heed the advice of medical professionals "suggest[ed] that [Plaintiff's] symptoms may not be as severe as she purports." AR 93.

Collectively, these observations prompted the ALJ to render an adverse credibility finding against Plaintiff. In doing so, the ALJ remarked that "[d]espite the complaints of alleged disabling symptoms . . . [Plaintiff] has failed to take medications as prescribed for those symptoms and has failed to continue with therapy as recommended." AR 93. Furthermore, she found that Plaintiff's "lack of motivation to continue with treatment and take medications as prescribed indicated that her condition is not as severe as she alleges." AR 93. In the parting sentence of this section, the ALJ cited a treatment note from June 2015 that suggested not only that Plaintiff's motivation to attend therapy was low, but that an "ulterior motive" for attending therapy might have been the procurement of disability benefits. AR 93.

Alongside Plaintiff's credibility finding, the ALJ also referenced medical opinions in the record to formulate Plaintiff's RFC. In this case, those records consisted of only two non-examining consultative psychologists. The ALJ treated the opinions in tandem, and accorded

them "some weight," as she felt that treatment notes supported the examiners' conclusion "that the claimant has moderate impairments in the areas of social functioning and concentration, persistence or pace." AR 94. She reasoned that conclusion was "sound" and based on treatment notes that showed Plaintiff's anxiety to be both causing her "to avoid certain situations" and "interfering with her ability to handle complex or detailed tasks." AR 94. The ALJ similarly approved of the examiners' opinion that Plaintiff "is able to perform simple and routine tasks," even as she felt the need to restrict Plaintiff's interaction with the public beyond what they had recommended. By the ALJ's account, "treatment notes indicate [Plaintiff's] main issue is personality driven and she continues to have longstanding difficulty in managing relationships." AR 94.

In the second phase of step four, the ALJ identified Plaintiff's past relevant work as being a lead cashier, assistant manager, customer service representative, teller, and cashier/checker. AR 94. Then, at the third and final phase of step four, the ALJ found that "the demands of [Plaintiff's] past relevant work exceed [her] residual functional capacity." AR 94.

At step five, the ALJ relied on the testimony of the VE to determine what jobs, if any, Plaintiff could still perform. The VE took Plaintiff's RFC into consideration and opined that Plaintiff could perform the occupations of addresser, Dictionary of Occupational Titles ("DOT")[3] # 209.587-010, shipping and receiving weigher, DOT # 222.387-074, and dishwasher, DOT # 38-687-010. AR 95. The ALJ accepted the VE's testimony and found Plaintiff "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 96.

---

[3] The DOT includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy. 20 C.F.R. § 220.134 (2018). Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2018).

In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied her claim. AR 96.

## V. ANALYSIS

Plaintiff's Motion advances two allegations of error, but the Court need only address the first. There, Plaintiff maintains that the Appeals Council committed reversible error by failing to consider qualifying new evidence that she submitted in support of her disability application. For the reasons that follow, this Court agrees.

### A. Post-Hearing Evidence Before the Appeals Council

Following the ALJ's unfavorable decision, Plaintiff appealed to the Appeals Council. AR 83. In support thereof, Plaintiff provided numerous medical records to the Appeals Council, including the following records from Dr. Emily Moore, Ph.D., all of which were dated May 3, 2016, some four months after the ALJ rendered her decision:

(1) A fifteen-page "Psychological Evaluation";

(2) "Medical Assessment of Ability to Do Work-Related Activities (Mental)" ("Mental Medical Assessment");

(3) Listing Worksheet - 12.03 (schizophrenic and psychotic disorders);

(4) Listing Worksheet - 12.04 (affective disorders);

(5) Listing Worksheet - 12.06 (anxiety-related disorders); and

(6) Listing Worksheet - 12.08 (personality disorders).

AR 55-76 (collectively, "the Dr. Moore documents"). In the first two documents, Dr. Moore discussed her evaluation and diagnosis of Plaintiff, as well as the numerous marked restrictions she believed Plaintiff to possess that prevent her from maintaining gainful employment. AR 55-72. Within the Listings worksheets, Dr. Moore evaluated Plaintiff's symptoms for severity that

might equal or surpass the relevant Listing, and in each of the four instances, she found Plaintiff to meet the Listing. AR 73-76. Beyond the Dr. Moore documents, Plaintiff also submitted several hundred pages of her medical records from the University of New Mexico Health Sciences Center ("UNM"). AR 5, 914-1373.

The Appeals Council allowed Plaintiff's treatment notes from UNM into the record, but refused to admit the Dr. Moore documents. AR 2, 5. It opined that the Dr. Moore documents were "about a later time," and did "not affect the decision about whether [Plaintiff was] disabled beginning on or before December 21, 2015." AR 2. Thus, without ever considering the Dr. Moore documents, the Appeals Council declined review. AR 2.

### B.     The Parties' Arguments

Plaintiff argues that the failure to consider the Dr. Moore documents constitutes reversible error. More specifically, she contends that the Appeals Council erred by finding that Dr. Moore's opinions did not relate to the time period before December 21, 2015. Pl.'s Mot. 15-16. Plaintiff explains that Dr. Moore's Psychological Evaluation and Mental Medical Assessment "address [Plaintiff's] mental health issues that were before the ALJ," and that the documentation "corroborate[s] the diagnoses of major depressive disorder with psychotic features and generalized anxiety disorder." *Id.* at 16 (citing AR 66). In sum, she maintains that the Dr. Moore documents met the legal standard for admission, as they were new, material, and chronologically pertinent, and thus, by rejecting them, the Appeals Council committed a "clear error of law that requires remand." *Id.*

The Commissioner responds that "Plaintiff's invitation to remand her case based on Dr. Moore's opinion alone should be declined." Def.'s Resp. 15. The Commissioner directs the Court to Tenth Circuit precedent establishing that this Court may review, *de novo*, "the limited

legal question of whether additional evidence submitted to the Appeals Council qualifies as new, material, and chronologically relevant." *Id.* at 12 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). Based on that standard, the Commissioner stipulates that the Dr. Moore documents are new, but claims they are neither material nor chronologically relevant. To support the documents not being material, the Commissioner states only that Dr. Moore "was not a treating source – rather, she examined Plaintiff once months after the relevant time period." *Id.* at 14. As to chronological relevance, the Commissioner alleges that only one form asked for Dr. Moore's responses "from 2015 to current examination," and that "nothing else in Dr. Moore's opinion related back to the relevant time period." *Id.* Further, she contends that the phrase "from 2015 to current examination" is itself "very vague." *Id.* As a consequence, she concludes that "Dr. Moore's opinion dated after the relevant time period and based only on her one-time examination of Plaintiff does not cast doubt on the ALJ's decision that Plaintiff was not disabled prior to December 21, 2015." *Id.*

C.     **Standard for Reviewing Post-Hearing Evidence**

Pursuant to 20 C.F.R. § 404.970(b), "new evidence [submitted to the Appeals Council] becomes a part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)). The Appeals Council is required to consider evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Id.* (quoting *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995)). "If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings." *Id.*

Whether evidence submitted to the Appeals Council qualifies as new, material, and

chronologically pertinent is a question of law subject to *de novo* review. *Threat*, 353 F.3d at 1191. "Evidence is new within the meaning of § 404.970(b) if it is not duplicative or cumulative." *Id.* (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Evidence is material to the determination of disability "if there is a reasonable possibility that it would have changed the outcome." *Id.* Lastly, evidence is chronologically pertinent if it relates to the time period on or before the ALJ's decision. *Id.*

### D. The Appeals Council Erroneously Declined to Consider the Dr. Moore Documents

The Appeals Council declined Plaintiff's request for review on March 8, 2017, and enumerated its reasons for doing so in a "Notice of Appeals Council Action" ("Notice"). AR 1-4. In the Notice, the Appeals Council used precise terminology to delineate those matters it considered from those that it did not. The Appeals Council stated that it "*considered* whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." AR 2 (emphasis added). Moreover, the Appeals Council indicated that it "*considered* the reasons you disagree with the decision *and the additional evidence listed in the enclosed Order of Appeals Council.*" AR 2 (emphasis added). In the enclosed "Order of Appeals Council," the Appeals Council admitted numerous medical records submitted by Plaintiff, but conspicuously omitted the Dr. Moore documents. AR 5. The Appeals Council acknowledged receipt of the documents, stating it had "looked at" them, but concluded that the "information is about a later time" and "does not affect the decision about whether you were disabled beginning on or before December 21, 2015." AR 2. Thus, despite the parties' apparent confusion as to whether the Appeals Council considered Dr. Moore's opinions, the record makes clear that the Appeals Council did not consider them and did not

admit them into the record.[4]

Thus, the question presented is whether the Dr. Moore documents should have been considered by the Appeals Council. To resolve that inquiry, the Court must engage in a *de novo* review to determine if the Dr. Moore documents are new, material, and chronologically pertinent. *See Threet*, 353 F.3d at 1185.

### 1. The Dr. Moore documents are new

As a threshold matter, the Commissioner stipulates that the Dr. Moore documents are new, "in that the opinion was not before the ALJ." Def.'s Resp. 13. The Court agrees and finds that all of the Dr. Moore documents are new, in that they are not cumulative or duplicative to documents that were present in the record before the ALJ. *See Threet*, 353 F.3d at 1191.

### 2. The Dr. Moore documents are material

The Commissioner disputes the materiality of the Dr. Moore documents, albeit with little enthusiasm. In fact, the Commissioner's only argument against the documents' materiality is that Dr. Moore is a consultative examiner rather than a treating physician. Def.'s Resp. 14. This distinction hardly suffices to persuade this Court.

Dr. Moore's Mental Medical Assessment stands in stark contrast to the opinions of the two non-examining consultative psychologists cited by the ALJ, both of whom found Plaintiff to be "not significantly limited" in nearly every aspect of her mental capacity to complete work tasks. AR 147-48 (Dr. Cheryl Woodson-Johnson, Psy.D.), 173-74 (Dr. Don B. Johnson, Ph.D.). The only areas where they found even moderate limitations involved: (1) the ability to

---

[4] When citing standards for this Court to consider during its analysis, the Commissioner cites only to authority relevant to scenarios where the Appeals Council *has* considered the evidence in question. Def.'s Resp. 12-13, ECF No. 20. This strikes the Court as noteworthy, since the Commissioner was clearly aware that the Appeals Council did not consider or admit Dr. Moore's documents, as she referred to them as "evidence that the Appeals Council referenced but did not exhibit [sic]." *Id.* at 13. For her part, Plaintiff evinces even less understanding of what the Appeals Council did. Indeed, she claims that "[t]he AC accepted the medical source statement from Dr. Moore and made it part of the record, but ultimately declined review of [Plaintiff's] case." Pl.'s Reply 1, ECF No. 22.

understand and remember instructions, (2) the ability to carry out detailed instructions, and (3) the ability to accept instructions and respond appropriately to criticism from supervisors. AR 147-48, 173-74. In contrast, following her examination of Plaintiff on March 25, 2016 [AR 55], Dr. Moore concluded that Plaintiff suffered from *at least* moderate limitations in every category of mental capacity to carry out work functions. AR 71-72. Moreover, she identified no less than *eleven* marked limitations in Plaintiff's ability to carry out work functions, any one of which if accepted would render Plaintiff unable to maintain employment.[5] AR 71-72. Additionally, in four separate Listing Worksheets, Dr. Moore memorialized her conclusion that Plaintiff suffered from mental impairments severe enough to meet or exceed the requirements of Listing 12.03 (schizophrenic and psychotic disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders). AR 73-76.

At the time of her decision, the ALJ had *only* the medical opinions of the two non-examining consultative psychologists to inform her understanding of the contours of Plaintiff's mental limitations. They generally found Plaintiff to be without meaningful limitations in her ability to complete work-related activities. No other opinions appeared in the record.

Dr. Moore, who actually personally examined Plaintiff, believed Plaintiff to suffer disabling mental impairments, and reduced that opinion to writing in three ways. First, Dr. Moore supported her findings by composing her Psychological Evaluation – a fifteen-page, comprehensive analysis of Plaintiff's mental health history, symptoms, assessment, and treatment, along with Dr. Moore's diagnosis of Plaintiff's disabling mental conditions. AR 55-69. Strikingly, Dr. Moore believed Plaintiff's mental condition to be so severe that she

---

[5] Dr. Moore's report defined a "marked" limitation as "[a] severe limitation which <u>precludes</u> the individual's ability usefully to perform the designated activity on a regular and sustained basis, i.e. 8 hours a day, 5 days a week, or an equivalent schedule. The individual cannot be expected to function independently, appropriately, and effectively on a regular and sustained basis." AR 72 (emphasis in original).

recommended someone be appointed to act as custodian for her finances, in the event she received disability payments. AR 69. Second, Dr. Moore communicated through the Mental Medical Assessment what she believed to be Plaintiff's eleven marked (and therefore disabling) limitations in her ability to complete work-related activities. AR 71-72. Lastly, Dr. Moore reinforced her diagnosis of Plaintiff's disability-level impairments by completing four Listing Worksheets, wherein she ascribed to Plaintiff four individuated sets of symptoms meeting SSA definitions for presumptive disability.

The disagreement between the non-examining consultative psychologists' opinions and that of Dr. Moore is obvious. And whereas the non-examining consultative psychologists' opinions are based on a relatively threadbare analysis, Dr. Moore's findings are supported by an examination of Plaintiff and a voluminous investigation of Plaintiff's history and treatment notes. Based on that distinction, it is clear to this Court that the inclusion of *any* of the three categories of Dr. Moore's documents: the Psychological Evaluation, the Mental Medical Assessment, or the Listings Worksheets into the ALJ's calculus could be said to have at least a reasonable possibility of changing the outcome of Plaintiff's case. *See Threet*, 353 F.3d 1185. Therefore, the Court finds each of these documents to be material, whether considered singly or in combination with one another.

### 3. The Dr. Moore Documents Are Chronologically Pertinent

The final question this Court must answer is whether the Dr. Moore documents are chronologically pertinent. Here, the evidence submitted by Plaintiff to the Appeals Council can only be said to be "chronologically pertinent" if it relates to the time period on or before the ALJ's decision of December 21, 2015. *See id.* at 1191.

Plaintiff contends that all of the Dr. Moore documents are chronologically pertinent, as

each is "pertinent to the issues that were before the ALJ." Pl.'s Mot. 15 (citations omitted). She specifically reasons that both Dr. Moore's Psychological Evaluation and her Mental Medical Assessment address the "mental health issues that were before the ALJ" and corroborate Plaintiff's diagnoses of "major depressive disorder with psychotic features and generalized anxiety disorder." *Id.* at 16 (citing AR 66). Plaintiff further contends that, based on its plain language, "Dr. Moore's [Mental Medical Assessment] applies, at least, to the whole of 2015." *Id.* (citing AR 71).

The Commissioner disagrees, stating that "despite the fact that one form asked for Dr. Moore's responses 'from 2015 to current examination' . . . nothing else in Dr. Moore's opinion related back to the relevant time period." Def.'s Resp. 14. In the Commissioner's estimation, "Dr. Moore's opinion dated after the relevant time period and based only on her one-time examination of Plaintiff does not cast doubt on the ALJ's decision that Plaintiff was not disabled prior to December 21, 2015." *Id.* Even to the extent the Mental Medical Assessment asked Dr. Moore to advance her opinion "from 2015 to current examination," the Commissioner believes the phrase to be "very vague" and asks this Court to construe the term against Plaintiff. *Id.*

The Court holds that the Appeals Council erred in failing to consider the Dr. Moore documents. In *Padilla v. Colvin*, the Tenth Circuit Court of Appeals did not require newly submitted evidence to the Appeals Council to pre-date the ALJ's decision in order for it to qualify as chronologically pertinent. *See Padilla v. Colvin*, 525 F. App'x 710 (10th Cir. 2013) (unpublished). Rather, the court focused on whether the new evidence was pertinent to the issues that had been before the ALJ. The plaintiff in *Padilla* submitted evidence of non-exertional limitations that post-dated the ALJ's unfavorable decision in an effort to challenge the ALJ's RFC, which only focused on Plaintiff's exertional limitations. *See generally id.* As in this

case, the Appeals Council rejected the evidence on the basis that it was not chronologically pertinent.  *Id.* at 711.  The district court affirmed the Commissioner's denial of benefits. *Id.*

On appeal, the Tenth Circuit overturned the district court's decision, holding the evidence was chronologically pertinent because it related to issues that were considered during the time period in question.  *Id.* at 713.  The court reasoned that the psychological report submitted related to an anxiety diagnosis the plaintiff reported before the ALJ made his decision, and an audiological report related to the plaintiff's administrative hearing testimony.  *Id.*  For these reasons, the court held the evidence to be chronologically pertinent and remanded the case with instructions to the Appeals Council to consider the evidence. *Id.*

This case is similar to *Padilla* in that the Dr. Moore documents were rejected by the Appeals Council on the basis that they were not chronologically pertinent.  Following the Tenth Circuit's reasoning in *Padilla*, this Court must decide whether the Dr. Moore documents relate to the mental health issues considered by the ALJ during the relevant time period, January 13, 2012, thru December 21, 2015.  The Court answers that inquiry in the affirmative.

In fact, the Court finds that the Dr. Moore documents directly concern the mental health impairments that were considered by the ALJ during the relevant time period.  Dr. Moore's Psychological Evaluation specifically concerns Plaintiff's mental health from a longitudinal perspective, and addresses reports, diagnoses, and findings from the relevant time period at length before reaching its own conclusion and diagnosis.  AR 55-69.  Dr. Moore's Listing Worksheets address the three Listings reviewed by the ALJ - 12.04, 12.06, and 12.08 - while also adding an additional evaluation for Listing 12.03, which Dr. Moore's report makes clear should have been previously considered by Plaintiff's mental health providers.  AR 73-76.  *See also* AR 69 (Dr. Moore opining that "[a] full psychological evaluation is strongly recommended in order

to rule out the presence of a Schizoaffective Disorder"). Lastly, Dr. Moore's Mental Medical Assessment addresses the same non-exertional limitations addressed by both the non-examining consultative psychologists and the ALJ, and does so "from 2015 to current examination." AR 71. Despite the Commissioner's intimation of vagueness, *see* Def.'s Resp. 14, the Court does not believe the phrase "from 2015 to current examination" to be ambiguous. To the contrary, the Court believes that phrase to encompass the entirety of calendar year 2015, thereby communicating Dr. Moore's opinion on Plaintiff's mental ability to carry out work-related activities for almost a full calendar year preceding the ALJ's decision. AR 71-72. As a result, the Court finds the Dr. Moore documents to be chronologically pertinent. This finding, coupled with the previous findings that the Dr. Moore documents were new and material, compels the Court to conclude that the Dr. Moore documents constituted qualifying evidence for consideration by the Appeals Council.

Because the Dr. Moore documents qualify as new, material, and chronologically pertinent under 20 C.F.R. § 404.970(b), the Court will require the Appeals Council to consider them.

## VI.    CONCLUSION

The Court concludes that the Appeals Council committed reversible legal error by failing to consider qualifying new evidence presented to it.

**IT IS THEREFORE ORDERED** that Plaintiff's "Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum" [ECF No. 18] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and that the instant cause is **REMANDED** for further review consistent with this opinion**.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***